STATE of Arkansas *v.* Glen HERRED

CR 97-664 964 S.W.2d 391

Supreme Court of Arkansas
Opinion delivered March 12, 1998

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellant.

*Louis A. Etoch*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Glen Herred pleaded guilty to a charge of attempted possession of a controlled substance with intent to deliver, a Class A felony. He subsequently filed a petition for relief under Ark. R. Crim. P. 26.1 and 37, which the trial court granted. We reverse and hold that the trial court clearly erred in granting relief.

Sometime before midnight on June 19, 1996, the police executed a nighttime search warrant at the residence located at 625 Quarrles Street in Marvell. Among other things the officers seized

a gun, as well as twenty-four grams of cocaine that were discovered in a pair of shorts belonging to Sadere Baker, found underneath Baker's "bed tick." At the time the police entered, Baker was in bed with Herred, her boyfriend. Baker was the mother of Herred's three children. Both Herred and Baker were arrested, along with other people inside the residence.

On July 30, 1996, the police charged Herred with one count of possession of a controlled substance with intent to deliver, a Class Y felony, as well as simultaneous possession of drugs and firearms, a Class Y felony. Baker was charged as well. Herred appeared for trial on December 12, 1996. Represented by retained counsel, Herred entered a negotiated plea of guilty. The State nolle prossed the simultaneous-possession count, and Herred pleaded guilty to a reduced charge of attempted possession of a controlled substance with intent to deliver, a Class A felony. Following a colloquy with Herred, the trial court accepted the plea as well as the State's recommendation of fifteen years' imprisonment, with credit for time served. The trial court further explained to Herred that he was going to allow Herred to remain on bond until December 26, 1996. On December 13, 1996, Sadere Baker pleaded guilty to attempted possession of a controlled substance with intent to deliver, a Class A felony, and received a six-year suspended sentence. On December 18, 1996, the judgment and commitment order in Herred's case was entered.

On December 23, 1996, Herred filed a *pro se* "Verified Petition Under Rule 26.1 and 37, Ark. R. Crim. P. And Ark. Code Ann. § 16-90-111 To Set Aside Guilty Plea, To Vacate, Or To Correct Defendant's Sentence And For Other Proper Relief." Among other things, Herred claimed that he was denied effective assistance of counsel, and that his plea was coerced as a result of threats of prosecution levied against Baker, the mother of his children. On December 26, Herred reported to begin serving his sentence, and on January 28, 1997, the trial court held an evidentiary hearing on the petition. Attorney Louis Etoch, who had previously represented Sadere Baker in connection with the original charges, represented Herred at the postconviction hearing.

Vandall Bland was the attorney who represented Herred at the time he pleaded guilty, and had been retained about a month before the trial date. On that date, Bland had a number of other cases set for trial, as he was the Phillips County Public Defender. He explained that he had filed no written motions in the case, and had not filed a motion to suppress the drugs seized from the residence. While he had filed no discovery motions in the case, the prosecutor had provided him with the file. Bland was prepared to go to trial because he had all of the discovery and all of the witnesses were available to testify. He was not aware that Herred had been drinking that day. In fact, he did not notice any of the telltale signs of intoxication such as slurred speech, blood-shot eyes or unsteadiness. Nor did he smell any alcohol on Herred, although he conceded that he could not "smell that well." Bland knew that Herred could read and write. He also thought that he had read the plea execution form to Herred, and had him initial it. Baker and Herred were crying on the day of the plea.

Bland was aware that the prosecutor had offered Sadere Baker (who had also been charged) probation if she testified against Herred. It was Bland's understanding that the prosecutor would offer Baker a suspended sentence in exchange for Herred's plea. This occurred in the judge's chambers, where Bland, Herred, Baker, and Attorney Louis Etoch (then representing Baker) were all present. Etoch had advised Baker not to testify against Herred.

Victor Owens, a longtime friend of Herred's, testified that the night before the plea he and Herred drank substantial quantities of alcohol, and Herred appeared intoxicated. They stayed out until about 12:30 that night. Herred was ill and taking "Tylenol and a lot of more drugs." Herred expressed his innocence and concern for his children. Owens stated that Herred had lived at the Baker residence with Sadere less than a year, but later clarified that "he wasn't staying there that I know of."

Sadere Baker testified that Herred was not living with her at her residence. Baker stated that the cocaine seized was hers, and that she was keeping it for a friend. On cross-examination, she stated that her intent was to sell it to make money. The cocaine was "in [her] shorts under [her] bed tick." She did not inform

Herred of the cocaine, and he did not see it to her knowledge. The night before the plea, Herred came in around 12:30 or 1:00 in the morning and appeared intoxicated. He was also taking medication for sinus problems, and he drank some more the morning he came to court. On the day of Herred's trial, she understood that the plea negotiations were that she would get probation in exchange for Herred's plea. They were both crying on the day of the plea because the drugs did not belong to Herred and she did not want him to go to jail. He told her that he would rather go to jail. As Bland was discussing the case with Herred, Baker told Herred that she did not want to go to jail. She stated that the gun in her house belonged to Kevin Sanders, apparently Herred's nephew, who was willing to testify to that effect.

Glen Herred testified that he was not incarcerated immediately after his plea, but that he began serving his term on December 26. He stated that he did not live at the Baker residence. He was not aware that his case was going to trial on December 12, 1996, until the day before. He did not sleep well the night before the trial date, and he drank a large quantity of alcohol as well as medication for flu symptoms. On the way to Bland's office the morning of trial he drank a beer. He did not know that cocaine was in the house, and did not possess it. Neither did he know that the gun was in the house. Bland told him that Baker would be sentenced "fifteen to life" if he "didn't take them charges." He also told Bland about Kevin Sanders admitting to possessing the gun, to which Bland responded that he should do the "manly thing and take the charge, because if you let that young kid take the charge, they will try to hang him. So he told me to do the right thing, just take the charges." Etoch explained to Herred that Baker would get probation only if she testified against him, and later that she would only get probation if he pleaded guilty. Herred expressed his innocence to Bland, but he pleaded guilty because he wanted the mother of his children to take care of the children. He did not feel that Bland was prepared to try the case. Bland told him that he would get life if he went to trial. Herred testified that he lied in answering the questions asked of him during the plea colloquy. He stated that he paid some bills at the

Baker residence, and considered it "home" along with his mother's house.

Lovell Ashley Higgins was then the circuit judge who took Herred's plea. He noticed nothing unusual about Herred's appearance or demeanor on December 12 while he took the plea. Judge Higgins had been in Herred's presence for at least one hour before the plea was taken. Part of that time was in the close confines of the judge's chambers where he saw no signs of intoxication. Nor did he smell the odor of intoxicants. Judge Higgins did have concerns about Etoch trying to manipulate Herred.

Following this evidentiary hearing, the trial court entered an order on April 10, 1997, vacating Herred's plea and granting him a new trial. The trial court found that Herred's petition was untimely pursuant to Ark. R. Crim. P. 26.1, and denied Herred's requested relief to the extent that it was a Rule 26.1 motion to withdraw guilty plea. Considering Herred's petition as a Rule 37 motion for postconviction relief, the trial court found that Herred was denied effective assistance of counsel and that his plea was coerced. The trial court's order contains the following findings:

> — Defense counsel had represented Herred for only a month, counsel's time was inadequate for preparation;
> — The only motions filed by defense counsel were oral motions made the morning of trial;
> — Defense counsel also served as the Phillips County Public Defender during which he had a large number of cases set for trial;
> — Defense counsel testified that the prosecutor had voluntarily given him discovery;
> — Defense counsel made no motion to suppress the drugs and gun seized pursuant to the nighttime search warrant;
> — It was unclear whether the search warrant was properly executed so as to authorize a nighttime search;
> — Defense counsel testified "the whole case created a problem";
> — Defense counsel issued no subpoenas and did not respond to discovery motions;
> — Defense counsel did not move for a continuance;

— Defense counsel testified that he knew that Sadere Baker, Herred's girlfriend and the mother of his children, would receive a five-year suspended sentence if Herred pleaded guilty;

— Defense counsel testified that there was "pressure" on Herred;

— Defense counsel testified that "I think what persuaded him to take the plea . . . he was looking out for Sadera [sic]";

— Herred and Sadere Baker were outside the courtroom crying immediately before entering the plea;

— The State did not "deny or refute" Herred's contention that he must plead guilty before the State would offer Baker a suspended sentence;

— Defense counsel testified that the prosecutor reminded him of the "Sam Lanford" case (Herred's defense counsel had also represented Lanford), where the defendant refused a plea bargain, went to trial and received a 120-year sentence;

— Defense counsel testified that the prosecutor "pushed his chest out";

— A longtime friend of Herred's testified that the night before the plea was entered Herred expressed concern for his children, "needed someone to talk to," and consumed substantial amounts of alcoholic beverages;

— "Defendant Herred was granted a hearing and given an opportunity to prove that the entry of the plea was the result of fear or threats that his wife would be tried or brought to trial";

— The trial court found that the State insisted on Herred's guilty plea before offering a suspended sentence to Sadere Baker the next day;

— Sadere Baker was the mother of Herred's children, ages one, two, and three;

— Herred entered the plea as a result of "threats of prosecution of the mother of his children";

— Defense counsel testified that "I might have told him that the manly thing to do was take the charge."

Following these findings, the trial court's order concludes as follows:

A two part test for reviewing claims of ineffective assistance of counsel was adopted by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984): (1) The Defendant must show that counsel's representations fell below an objectionable [sic] standard of reasonable [sic] and (2) The Defendant

must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Based upon the totality of the circumstances and the record herein, the Court finds that the counsel's assistance was ineffective.

The Court hereby grants Defendant's petition to set aside the guilty plea and orders a new trial.

The State brings the present appeal.

## I.

■ The State first argues that the trial court lacked jurisdiction to grant Herred Rule 37 relief because he was not "in custody" when he filed his petition. Rule 37.1, defining the scope of the rule, provides that relief is available to "[a] petitioner in custody under sentence of a circuit court claiming a right to be released, or to have a new trial, or to have the original sentence modified . . . ." In support of this proposition the State primarily relies on *Coplen v. State*, 298 Ark. 272, 766 S.W.2d 612 (1989) and *Malone v. State*, 294 Ark. 376, 742 S.W.2d 945 (1988). In *Coplen* the appellant was convicted of two counts of battery and later sought postconviction relief. At the time petitioner filed his petition with the trial court, "he was not in custody." The *Coplen* court affirmed the trial court's denial of postconviction relief because the petition failed to state any grounds for either habeas corpus relief or relief under Rule 37. In conclusion the court notes that "[petitioner] was not in custody when his petition was filed, a prerequisite for Relief." *Id.* (citing Ark. R. Crim. P. 37.1; *Malone v. State*, 294 Ark. 376, 742 S.W.2d 945 (1988)).

In *Malone, supra*, the appellants pleaded guilty to charges of criminal mischief and theft by receiving and were sentenced to two years' imprisonment. They subsequently argued that the trial court erred in denying their motions to withdraw their pleas, in rejecting their contention that they received ineffective assistance of counsel, and in denying their alternative request for Rule 37 relief. The *Malone* court affirmed the denial of relief under Rule 26, noting that their motion was untimely in that it was made more than one month after their conviction orders were entered. The court then noted that "the 'Scope of the Remedy' for pro-

ceedings under Rule 37 is confined to a prisoner, in custody under sentence of a circuit court. [citation omitted]. Here, the appellants were out of custody on their original bonds when they filed their motion for relief under Rule 37." *Id.* Continuing to the merits, the *Malone* court concluded that the appellants' allegations failed to justify postconviction relief.

■ ■ We must reject the State's argument that the trial court lacked jurisdiction to grant Herred Rule 37 relief. First, Herred in his petition purported to seek relief under Rule 26.1 as well as Rule 37. Rule 26.1(b) provides as follows:

> (b) A motion to withdraw a plea of guilty or nolo contendere to correct a manifest injustice is timely if, upon consideration of the nature of the allegations of the motion, the court determines that it is made with due diligence. Such motion is not barred because it is made after the entry of judgment upon the plea. If the defendant is allowed to withdraw his plea after judgment has been entered, the court shall set aside the judgment and the plea.

We have allowed a petitioner to proceed under this rule when his motion to withdraw a guilty plea has been filed prior to the time sentence has been entered and placed in execution. *Johninson v. State*, 330 Ark. 381, 953 S.W.2d 883 (1997). A judgment has been placed in execution "when the court issues a commitment order unless the trial court grants appellate bond or specifically delays execution of sentence upon other valid grounds." *Redding v. State*, 293 Ark. 411, 738 S.W.2d 410 (1987).

■ While the trial court entered the judgment and commitment order on December 18, before Herred's petition was filed, the trial court specifically delayed the execution of sentence until December 26, allowing Herred to remain free on bond. Thus, Herred's Rule 26.1 motion to withdraw was timely filed, unlike the appellants in *Malone*. Just as in *Johninson, supra*, "Rule 26.1(a) is obviously not applicable because the motion was not made prior to the pronouncement of sentence, we are relegated to subsection (b) and Rule 37." Because Herred was in custody

when the trial court ultimately disposed of his motion,[1] and because his motion was otherwise timely under Rules 26.1(b) and 37.2, we conclude that the trial court had jurisdiction to consider the merits of Herred's Rule 37 motion. *Cf. Johninson, supra.*

## II.

 When a defendant pleads guilty, the only claims cognizable in Rule 37 proceedings are those which allege that the plea was not made voluntarily and intelligently or was entered without effective assistance of counsel. *Bryant v. State*, 323 Ark. 130, 913 S.W.2d 257 (1996). We will not reverse the trial court's findings granting or denying postconviction relief absent clear error. *See Rowe v. State*, 318 Ark. 25, 883 S.W.2d 804 (1994). To be entitled to withdraw a guilty plea due to ineffective assistance of counsel, the petitioner must show as follows:

> In *Hill v. Lockhart*, 474 U.S. 52 (1985), [it was held that] the two-part standard adopted in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating claims of ineffective assistance of counsel — requiring that the defendant show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different — applies to guilty plea challenges based on ineffective assistance of counsel. *In order to satisfy the second requirement, the defendant must show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.* It is the defendant's burden to prove ineffective assistance of counsel, and it is a heavy burden because counsel is presumed effective. *Hicks v. State*, 289 Ark. 83, 709 S.W.2d 87 (1986).

*Johninson, supra* (quoting *Duncan v. State*, 304 Ark. 311, 802 S.W.2d 917 (1991) (emphasis supplied in *Johninson*)). A defendant who has pleaded guilty necessarily has difficulty in establishing prejudice given that his or her conviction is premised on an admission of guilt of the crime charged. *See Thompson v. State*, 307 Ark. 492, 821 S.W.2d 37 (1991).

---

[1] We note that neither the reported facts in *Coplen* nor *Malone* clearly indicate whether the petitioners where actually in custody when their motions were disposed of.

■ ■ To the extent that the trial court found that Herred would not have pleaded guilty but for ineffective assistance or that his plea was coerced due to the State's threats of prosecution against Baker, it was clearly erroneous. The State cites us to a number of federal circuits which hold that when a prosecutor threatens or offers leniency to a third party during plea negotiations with a defendant, the prosecutor is held to a "high standard of good faith" in such circumstances that is satisfied by probable cause to prosecute the third party. *See Miles v. Dorsey*, 61 F.3d 1459 (10th Cir. 1995)("The government acts in good faith when it offers leniency for an indicted third party or threatens to prosecute an unindicted third party in exchange for a defendant's plea when the government has probable cause to prosecute the third party . . . . Consequently, so long as the government has prosecuted or threatened to prosecute a defendant's relative in good faith, the defendant's plea, entered to obtain leniency for the relative, is not involuntary."); *United States v. Pollard*, 959 F.2d 1011 (D.C. Cir. 1991)("Where, as here, the government had probable cause to arrest and prosecute both defendants in a related crime, and there is no suggestion that the government conducted itself in bad faith in an effort to generate additional leverage over a defendant, we think a wired plea is constitutional."); *Martin v. Kemp*, 760 F.2d 1244 (11th. Cir. 1985) (threats against third party impose "high burden of good faith" on prosecutor that is met by probable cause to believe that the third party had committed a crime at the time of threat — case remanded to determine what the police knew at the time of the threat); *see also Stanley v. State*, 280 Ark. 245, 657 S.W.2d 285 (1983) (affirming denial of postconviction relief based on involuntary plea despite threats of a quicker trial and a substantial sentence for the appellant's wife, a co-defendant). Under the facts of the present case, there is no doubt that the State had probable cause to prosecute Baker when it informed Herred that it would offer Baker leniency in exchange for Herred's guilty plea. And, there is no doubt that the State had probable cause to search the residence Herred considered his "home." Thus, where the State had probable cause to arrest and prosecute Herred and Baker, Herred's guilty plea could not have been coerced as a result

of promises of leniency or threats of prosecution made against Baker.

 We also agree with the State that the trial court clearly erred in granting postconviction relief because it failed to find that any of counsel's purported deficiencies prejudiced Herred. The trial court's order simply recites a number of factual findings and ends with a conclusory remark that "counsel's assistance was ineffective" "[b]ased upon the totality of the circumstances." The trial court never specifically found that but for any of counsel's deficiencies, Herred would not have pleaded guilty and proceeded to trial. The order not only fails to set forth what, if any, additional information or defenses would have been discovered but for one or any combination of counsel's deficiencies. It also fails to find that, with the benefit of this additional information, there existed a reasonable probability Herred would have insisted on going to trial.

Indeed, the record of this case suggests otherwise. Herred initialled and signed a plea statement where he fully acknowledged that he knew what he was doing. Among other things, he initialed statements such as "Have you discussed your case fully with your attorney and are you satisfied with his services?" and "Are you entering a plea of guilty on your own free will and accord without anyone causing you to do so on account of any promises or threats or any force?" Judge Higgins specifically asked Herred if his attorney had gone over the document with him and if he understood the contents of the document — Herred responded affirmatively. In fact, Judge Higgins extensively queried Herred as to whether he understood his rights and the consequences of his actions, to which Herred repeatedly answered yes. Herred never expressed any dissatisfaction with his attorney at this time, and never suggested any coercion or threat, despite every opportunity to do so. Quite the contrary, Herred gained a considerable benefit from the plea. He was able to plead guilty to a substantially reduced charge, a class A felony, rather than two Class Y felonies.

 Moreover, none of the purported deficiencies prejudiced Herred. The prosecutor had voluntarily given Herred all of the discovery and all witnesses were available to testify at

trial. While the trial court appeared to criticize Herred's failure to file a motion to suppress because of facial deficiencies in the nighttime search warrant,[2] the warrant itself demonstrated the factual basis required to justify a nighttime search. *See* Ark. R. Crim. P. 13.2(c); *Neal v. State,* 320 Ark. 489, 898 S.W.2d 440 (1995). The warrant form used in the present case had three boxes allowing the judicial official to indicate a finding of reasonable cause to believe that circumstances justifying a nighttime search existed by checking three boxes. Two of these boxes were marked, the one providing "the objects to be seized are in danger of imminent removal," and the other providing "the warrant can only be safely or successfully executed at nighttime or under circumstances, the occurrence of which is difficult to predict with accuracy." Underneath this, there are instructions to "(State the facts relied on in determining the reasonable cause to believe one or more of the circumstances listed above existed.)" In this space, the following is typed:

> (1). THE SUBSTANCES TO BE SEIZED ARE IN DANGER OF IMMINENT REMOVAL, AN [*sic*] THE SUSPECTS ARE SELLING THE CONTR OLLED SUBSTANCES AT THIS TIME.

> (2). THE MARKED BUY MONEY IS IN DANGER OF IMMINENT REMOVAL.

> (3). IT IS REPORTED THAT THERE ARE WEAPONS IN THE HOUSE, AND THIS INVESTIGATOR FEELS THAT IT WOULD CONTRIBUTE TO OFFICER SAFETY.

These facts were corroborated by the warrant's supporting affidavit, which showed that the controlled buy had taken place hours before and that marked buy money had been used in the transaction. Thus, to the extent that the trial court ruled that counsel was unconstitutionally deficient in failing to object to the warrant's facial sufficiency because "[i]t [was] difficult for the Court

---

[2] The trial court's order provided "After examining the search warrant, it is unclear as to whether the appropriate boxes were checked. The second and third boxes appear to have a 'dot' in them. The box does not contain an X nor a Checkmark. It is difficult for the Court to make a determination as to whether or not a night time search was authorized."

to make a determination as to whether or not a night time search was authorized," it was clearly erroneous.

█ Based on the foregoing, the trial court clearly erred in granting Herred Rule 37 relief. The judgment of the trial court is reversed.

Reversed.

GLAZE, J., concurring. I concur and would dismiss based upon the trial court's lack of jurisdiction.