STATE of Arkansas v. Timothy Wayne HARDIN

CR 01-371                                      60 S.W.3d 397

Supreme Court of Arkansas
Opinion delivered November 29, 2001
[Petition for rehearing denied January 10, 2002.*]

---

\* Arnold, C.J., and Glaze and Imber, J.J., would grant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellant.

*James R. Wallace & Associates*, by: *H.C. Jay Martin*, for appellee.

RAY THORNTON, Justice. The State appeals the January 11, 2001, judgment of the Pulaski County Circuit Court, granting appellee, Timothy Wayne Hardin, a new trial on grounds of ineffective assistance of counsel pursuant to Ark. R. Crim. P. 37.2. The State contends that the trial court erred in granting Mr. Hardin a new trial because it did not find that counsel's ineffective assistance was prejudicial to him. It appears that the trial court erroneously relied upon *Neal v. State*, 270 Ark. 442, 605 S.W.2d 421 (1980), and found that ineffective assistance could be predicated upon a collective consideration of all the allegations. We disagree with the trial court's interpretation and application of *Neal, supra*, and reverse and remand the case to the trial court for further action consistent with this opinion.

On November 16, 1999, a jury convicted Mr. Hardin of one count of rape, one count of residential burglary, and one count of misdemeanor theft of property. Mr. Hardin's conviction was affirmed on direct appeal. *Hardin v. State*, CACR 99-604, 2000 WL 139258 (Ark. App. Feb. 2, 2000). Thereafter, Mr. Hardin filed a petition for postconviction relief pursuant to Rule 37, alleging that his attorney, Jeff Weber, had rendered ineffective assistance of counsel. In his petition, Mr. Hardin alleged that Mr. Weber was ineffective as counsel due to his (1) failure to investigate defenses, (2) failure to investigate defense witnesses, (3) failure to prepare Mr. Hardin to testify, and (4) failure to ask questions on cross-examination of the victim that Mr. Hardin requested him to ask.

The Rule 37 hearing began on November 3, 2000, and on January 11, 2001, the trial court entered an order granting Mr.

Hardin a new trial. It is from this order that the State now brings this appeal. While the underlying case is criminal in nature, which suggests that Ark. R. App. P.—Crim. 3 should apply, we have recognized that Rule 37 proceedings are "civil in nature" and have recently decided appeals by the State from grants of postconviction relief. *State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999) (citing *State v. Clemmons*, 334 Ark. 440, 976 S.W.2d 923 (1998); *State v. Herred*, 332 Ark. 241, 964 S.W.2d 391 (1998); *State v. Slocum*, 332 Ark. 207, 964 S.W.2d 388 (1998)). Having determined that this appeal is properly before us, we turn to the merits of the case.

## I. Standard of Review

On appeal from a trial court's ruling on Rule 37 relief, we will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001) (citing *Dillard, supra*). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Davis, supra* (citing *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997)).

## II. Ineffective Assistance of Counsel

We outlined the principles of law regarding postconviction challenges in *Davis, supra*, where we stated:

> For many years, Arkansas has allowed collateral attacks upon a final conviction and appeal by means of a postconviction challenge to determine whether a sentence was void because it violated fundamental rights guaranteed by the Constitutions or laws of Arkansas or the United States. The present rule for such a challenge is Ark. R. Crim P. 37, which provides the following grounds for a petition:
>
> > (a) that the sentence was imposed in violation of the Constitution or laws of the United States or this state; or
>
> > (b) that the court imposing the sentence was without jurisdiction to do so; or

(c) that the sentence was in excess of the maximum sentence authorized by law; or

(d) that the sentence is otherwise subject to collateral attack. . . .

Ark. R. Crim. P. 37.1. The most common ground for postconviction relief is the assertion that the petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668 (1984).

*Davis, supra.*

■ ■ We also outlined the *Strickland* standard for assessing the effectiveness of trial counsel in *Davis, supra*:

> [T]he petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. A court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.

*Id.* (quoting *Sasser v. State*, 338 Ark. 375, 993 S.W.2d 901 (1999)). In making a determination on a claim of ineffectiveness, the totality of the evidence before the factfinder must be considered. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000).

Upon examination of the trial court's order, we conclude that there is error in the order that requires us to remand the case. In its order granting Mr. Hardin a new trial, the trial court reasoned:

In *Neal v. State*, 270 Ark. 442, 605 S.W.2d 421 (1980) at 428, the Arkansas Supreme Court stated: "None of the specific allegations considered separately, if true, would justify vacation of the sentence . . . Still petitioner's allegations, considered collectively, warrant our granting permission to petitioner to apply to the trial court for relief under Rule 37 on the basis of the specific allegations of ineffective assistance of counsel enumerated above. . . ."

This court is of the opinion that the seriousness of the Class Y felony charge required more investigation and research than what was done by counsel, thus, rendering his assistance ineffective pursuant to Rule 37.

The State argues that the trial court's reliance on *Neal, supra,* is misplaced. We agree.

■ While the express language that the trial court recited in *Neal, supra,* seems to support the trial court's finding that cumulative error can be used to support a finding of ineffective assistance of counsel, that conclusion is mistaken. First, we note that *Neal, supra,* was decided when the former Rule 37 was in effect, and the former Rule 37 required petitioners who had appealed their convictions to seek our permission to proceed in circuit court. *See* Ark. R. Crim. P. 37.2(a) (1990) (modified 1991) ("If the conviction in the original case was appealed to the Supreme Court or Court of Appeals, then no proceedings under this rule shall be entertained by the circuit court without prior permission of the Supreme Court."); *but see* Ark. R. Crim P. 37.2(a) ("If the conviction in the original case was appealed to the Supreme Court or Court of Appeals, then no proceedings under this rule shall be entertained by the circuit court while the appeal is pending."). Therefore, the pronouncement in *Neal, supra,* was merely a determination that the petitioner was entitled to proceed with a Rule 37 hearing, not a resolution of the ultimate issue of whether trial counsel was ineffective. Second, we note that while *Neal, supra,* seems to suggest a cumulative-error analysis in ineffective assistance of counsel challenges, we have squarely rejected the cumulative-error analysis on numerous occasions. *E.g., Noel, supra* (holding that we do not recognize cumulative error in allegations of ineffective assistance of counsel). We conclude that the trial court erred in resting its *Strickland* analysis upon a cumulation of allegations of ineffective assistance of counsel. The trial court's reliance on *Neal, supra,* is misplaced. Because the trial court erroneously relied on *Neal, supra,* what we do not know is whether the trial court would have found that one or more of the allegations of ineffective assistance of counsel, standing alone,

showed that Mr. Weber made errors so serious that he was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment, and that the deficient performance prejudiced the defense sufficiently to undermine confidence in the outcome of the trial. *See Davis, supra.*

■ The State contends that the trial court erred in granting Mr. Hardin a new trial because it did not find that counsel's ineffective assistance was prejudicial to him. The State argues that the trial court's finding that counsel rendered ineffective assistance under Rule 37 was not adequate to show prejudice and that the failure to interview witnesses and other alleged deficiencies should be excused as trial strategy. From the record before us, and in light of the United States Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000), as well as the trial court's mistaken reliance upon cumulative error, we cannot say that the trial court was clearly erroneous on this point. We conclude that the case must be remanded to analyze the matter without giving consideration to cumulative error. Only when such an analysis is made will we be able to determine whether both prongs of *Strickland* have been met. Therefore, we remand the case for the trial court to make that determination.

Reversed and remanded.

ARNOLD, C.J., and GLAZE and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. The majority ignores that under *Strickland v. Washington*, regardless of whether or not counsel's performance was deficient, there must still be a showing of prejudice: "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." 466 U.S. 668, 693 (1984). The United States Supreme Court made it clear in *Strickland* that the existence of prejudice is paramount to a finding of ineffective assistance of counsel:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Id.* at 691-92. (Citation omitted.) It is not enough for the petitioner to show that the errors had some conceivable effect on the outcome of the proceeding; rather the petitioner must show there is a reasonable probability that, absent counsel's errors, the factfinder would have had a reasonable doubt as to guilt. *Id.* at 693-95.

Without determining whether any purported deficiencies in Mr. Weber's performance prejudiced Mr. Hardin, the majority remands this case and instructs the trial court "to analyze the matter without giving consideration to cumulative error." Remanding the case, however, is completely unnecessary. It is Mr. Hardin's failure to make the required showing of sufficient prejudice that defeats his ineffective-assistance-of-counsel claim, rather than the trial court's misplaced reliance on *Neal v. State*, 270 Ark. 442, 605 S.W.2d 421 (1980). This court has recently reversed the trial court's grant of a new trial in several cases after reviewing the record and determining that there was no showing of prejudice.

In *State v. Herred*, the trial court found that Herred was denied effective assistance of counsel and granted him a new trial. 332 Ark. 241, 964 S.W.2d 391 (1998). We held that the trial court clearly erred in granting postconviction relief "because it failed to find that any of counsel's purported deficiencies prejudiced Herred." *Id.* at 253, 964 S.W.2d at 398. We pointed out the trial court's failure to make a finding that there existed a reasonable probability of a different outcome. *Id.* Furthermore, we concluded that the record suggested otherwise. *Id.* Similarly, in *State v. Clemmons*, the circuit court found that the defendant was denied effective assistance of counsel and granted him a new trial. 334 Ark. 440, 976 S.W.2d 923 (1998). In reversing the circuit court's grant of a new trial, we noted that the circuit court failed to state how a "purported deficiency prejudiced Clemmons," and we held that "the circuit court was clearly erroneous in granting Clemmons a new trial because no showing was made that . . . Clemmons was prejudiced by counsel's deficient representation." *Id.* at 444, 976 S.W.2d at 925. In *State v. Slocum*, the trial court granted Slocum a new trial based on alleged ineffective assistance of counsel. 332 Ark. 207, 964 S.W.2d 388 (1998). Slocum asserted that his counsel was ineffective for failing to request a specific jury instruction. We held that the trial court clearly erred in granting the new trial, adding that "it cannot be said that the result of the trial would have been different had the instruction been requested." *Id.* at 213, 964 S.W.2d at 391.

Likewise, in this case, the trial court's order sets forth no facts showing prejudice and no such facts are apparent from the record.

In making a determination on a claim of ineffectiveness, the totality of the evidence before the factfinder must be considered. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). Once again, the Supreme Court has fully explained what a court should keep in mind as it makes the prejudice determination:

> [A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

*Strickland, supra,* at 695-96. Based upon the evidence submitted at the postconviction hearing in this case, we know what the omitted testimony would have been. Considering the totality of the evidence, it is inconceivable that the testimony of the witnesses who were not called by defense counsel to testify at trial, or Mr. Hardin's own testimony, would have produced a reasonable doubt in the minds of the jury as to Mr. Hardin's guilt.

In addressing whether the trial court's finding that counsel rendered ineffective assistance was adequate to show prejudice, the majority makes the following holding: "From the record before us, and in light of the United States Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000), as well as the trial court's mistaken reliance upon cumulative error, we cannot say that the trial court was clearly erroneous on this point." I disagree. Not only is the trial court's mistaken reliance upon cumulative error irrelevant, but the majority's application of *Williams v. Taylor* is misplaced, and the record before us does not show that Mr. Hardin was prejudiced by counsel's purported deficient performance. As demonstrated by *Herred, Clemmons,* and *Slocum, supra,* this court can reverse the grant of a new trial where it is clear from the record that no showing of prejudice has been made. Thus, the trial court's mistaken reliance upon cumulative error is of no consequence.

In addition to being distracted by the irrelevant cumulative error issue, the majority mistakenly relies upon *Williams v. Taylor*, 529 U.S. 362 (2000). The Supreme Court held in *Williams* that an attorney's failure to investigate and present substantial mitigating

evidence on behalf of a defendant warranted a finding of ineffective assistance of counsel. *Id.* Clearly, the case before us is distinguishable from *Williams.* It cannot be said there is substantial mitigating evidence in favor of Mr. Hardin. If there had been a "voluminous amount" of favorable evidence, as there was in *Williams,* Mr. Hardin might have been able to show that presentation of the omitted evidence would have changed the outcome of his trial. *Id.* at 396. The totality of the evidence in this case, however, weighs heavily against Mr. Hardin.

The witnesses who were not called at trial would have been able to testify only to the fact that Mr. Hardin and the victim were seen together in the months prior to the rape and to the fact that Mr. Hardin was seen near the victim's apartment building prior to the rape. The evidence might have included testimony from James McNeely, the security guard at the victim's apartment complex. Mr. McNeely testified at the postconviction hearing that he saw Mr. Hardin visiting the victim's apartment building "in the evening time a couple of times and one time at night." Mr. McNeely could not confirm the dates on which he saw Mr. Hardin, and testified that he had never seen Mr. Hardin and the victim together. Another potential witness was Mr. Hardin's friend, Henry Ray Harper, who testified at the hearing that, sometime in the summer of 1997, he traveled with Mr. Hardin to pick up the victim in Hot Springs. The trio then traveled back together to his house in Little Rock, where Mr. Harper saw Mr. Hardin and the victim "acting like lovebirds . . . like they, you know, had made up and were getting back together." Another potential witness, a Little Rock police officer, took a report from Mr. Hardin twelve days before the rape. According to the report, Mr. Hardin's car had been vandalized while parked near the victim's apartment building one evening. Although the police report places Mr. Hardin near the victim's apartment, it also reflects that he gave the officer a North Little Rock address, and not the victim's address, as his home address. From this evidence, it would have been just as likely for the jury to infer that Mr. Hardin was stalking the victim rather than visiting her.

The victim admitted to having a relationship with Mr. Hardin in 1996, but denied having any contact with him after she moved back to Little Rock in October 1997. Thus, some of the proposed testimony by the witnesses who were not called to testify at the trial might suggest the victim and Mr. Hardin had been dating immediately prior to the rape, contrary to the assertions of the victim. However, even if the omitted evidence had been used to attack the victim's credibility at trial, it would not have been strong enough to

show a reasonable probability of a different outcome at trial. Regardless of any prior relationship between the victim and Mr. Hardin, the evidence indicates that the encounter in question was one involving violence and not consent. Other testimony came out at trial, as well as physical and medical evidence, indicating that a rape occurred.

The officer who responded to the victim's 911 call testified that "the door was kind of kicked in . . ., [t]here were several dents around the door knob . . ., the dead bolt was kind of dented in a little bit" and the safety chain was broken. He also testified that the victim appeared injured and he called an ambulance. The emergency physician who examined the victim after the rape testified that, although the rape kit detected no sperm in the victim's vagina, she had nicks, or tears, in her vagina and cervix that were consistent with "recent sexual intercourse or some type of other physical trauma to the genital area," as well as reddened areas on her lower neck and right elbow. He testified that her injuries implied vigorous sexual intercourse that could be consistent with someone who was raped by force. Katrena Polite, a friend of the victim's, testified that she saw the victim the night of the rape and she was "frantic," "upset," "crying," "uncontrollable," and "couldn't speak." She also testified that the victim had injuries or bruises on her neck, knee, legs, and arms. The victim stayed with Ms. Polite for three days after the incident until her father arrived. The victim's father testified that prior to the rape his daughter was in fear of Mr. Hardin and that two days after the rape, "she was a wreck . . . she couldn't hardly walk . . . she was crying and she was nervous . . . [s]he said that she had been ripped." Furthermore, the victim testified that Mr. Hardin called her at work on December sixteenth and promised he would move to Michigan and she "wouldn't have anything else to worry about" if she would drop the charges against him.

Also, as this court is required to consider the totality of the evidence, we must consider that, in allowing Mr. Hardin to testify, Mr. Weber would have potentially opened the door to a large volume of evidence of prior bad acts committed by Mr. Hardin against the victim. As previously stated, the victim's father testified that his daughter feared Mr. Hardin. At the postconviction hearing, the victim's father also recounted an incident in which Mr. Hardin broke into the victim's apartment, poured Purex all over her clothes, and stole her VCR. The evidence also could have shown that, in 1996, the victim filed a domestic abuse petition against Mr. Hardin and was granted an order of protection. She eventually left the State of Arkansas because Mr. Hardin had made threats against

her and her family. Mr. Harper acknowledged at the postconviction hearing that the first relationship between the victim and Mr. Hardin "didn't work out too well," and that they "kind of, you know, got into a big argument and a big fight and this and that." He even admitted telling Mr. Hardin, "man, I wouldn't be talking to this girl because, you know, y'all had bad terms." Finally, according to the victim's own testimony, Mr. Hardin saw and approached her at a local mall in November 1997, called and threatened her at work on November 26, and kicked in the door of her apartment and raped her on November 30. Mr. Swain, the manager of security for Baptist Health, corroborated the victim's testimony about the threatening phone call on November 26. He testified that the victim contacted him on that date to fill out a complaint regarding an individual who had called and threatened her life. The victim also expressed fear that the caller might come onto her employer's property. She gave a description of Mr. Hardin and asked security to be on the lookout; she also asked for escorts to and from her car. A police report dated November 26, 1997, reflects that the victim filed a complaint against Mr. Hardin in which she stated that he threatened to kill her and vandalize her home.

Based on the foregoing, it is evident that the conviction in this case is supported by an overwhelming record. In granting postconviction relief, the trial court clearly erred because it failed to find that any of counsel's purported deficiencies prejudiced Mr. Hardin. Indeed, such a finding cannot be made when considering the totality of the evidence. Given the overwhelming evidence against Mr. Hardin, there is no reasonable probability that the omitted evidence would have changed the outcome of the trial. In reversing and remanding this case to the trial court, the majority ignores both established law and the overwhelming record supporting the jury's verdict.

For these reasons, I conclude that Rule 37 relief is not warranted and the judgment of the trial court should be reversed.

ARNOLD, C.J., and GLAZE, J., join in this dissent.