# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR–16–1067

| | | |
|---|---|---|
| LORI J. ROSE | | **Opinion Delivered:** May 31, 2017 |
| | **APPELLANT** | |
| | | APPEAL FROM THE POLK COUNTY CIRCUIT COURT [NO. 57CR-13-158] |
| V. | | |
| | | HONORABLE TED C. CAPEHEART, JUDGE |
| STATE OF ARKANSAS | | |
| | **APPELLEE** | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Lori Rose appeals the Polk County Circuit Court's order denying her Rule 37 petition for postconviction relief. Ark. R. Crim. P. 37.1 (2016). We assumed jurisdiction of this appeal pursuant to footnote 1 in *Barnes v. State*, 2017 Ark. 76, 511 S.W.3d 845 (per curiam). Rose contends that the trial court erred in denying her petition because trial counsel was ineffective for failing to (1) file a motion to suppress; (2) introduce a text message; (3) meet with Rose to prepare for trial; (4) present witnesses on Rose's behalf; and (5) involve Rose in the jury selection and voir dire. We affirm.

Rose was convicted by a Polk County jury of aggravated residential burglary, domestic battering in the second degree, aggravated assault, and terroristic threatening. At the trial on those charges, the victim, Billy Vaught, testified that he and Rose had been in a romantic relationship for approximately two years until they broke up on November 19, 2013. Two days later, Rose's teenage daughter phoned and asked him to stay at her home

SLIP OPINION

because she was home alone and could not reach her mother. After Rose returned, Vaught stayed overnight on Rose's couch and left the following day. That night, he went to bed early but woke up around midnight when Rose entered his bedroom, turned on the light, and stated that he should "prepare to die." She was under the impression that Vaught had molested her daughter. Vaught said that he could tell that the hammer of the gun had been cocked and that Rose had been drinking, so he kicked the gun with his left leg. The rifle went off and shot Vaught in the right leg just below the knee. They briefly struggled over the gun, but he shoved it under the bed. He called his sister, who drove him to the hospital, and Rose left before Vaught's sister arrived. Vaught's kneecap and femur bone were broken, and he had to have knee-replacement surgery. Vaught said that during their relationship, he and Rose frequently stayed at each other's homes, and that it was not necessary for them to have an explicit invitation to do so. Vaught said that he had not told Rose that she was no longer welcome in his home prior to the shooting.

Rose gave two statements to police after her arrest. In her first statement, which was played for the jury, Rose admitted that she had filed a police report against Vaught for alleged sexual abuse of her daughter, but she denied that she had been to his home or that she had shot him that night. The arresting officer testified that Rose did not appear to be highly intoxicated at the time he obtained her statement, although he could smell alcohol on her. Rose gave a second statement on the following day that was also played at trial. Rose claimed that she was scared and intoxicated and had not told the truth in her first interview. She admitted that she had gone to Vaught's home and that she had been drinking. She said that someone had told her that Vaught had also acted inappropriately

toward his son in the past, so she went to Vaught's home with the intention of taking his son home with her. She did not expect Vaught to be at home, but when she realized that he was asleep, she said that she grabbed the rifle sitting by the front door and went to speak to him. She had borrowed the same rifle from Vaught and returned it to his house after they had broken up earlier in the week. She said that the rifle was pointed down, not at Vaught, but when she asked him why he had hurt her daughter, he kicked the gun and it went off and shot him in the leg. She handed Vaught his cell phone, and he asked her to leave.

At the conclusion of the trial, Rose was found guilty of aggravated residential burglary, second-degree domestic battery, aggravated assault, and terroristic threatening. The jury recommended that she be sentenced to a total of seventy-two years, but the trial court sentenced her to a total of thirty-six years' imprisonment. This court affirmed Rose's convictions in *Rose v. State*, 2015 Ark. App. 563, 472 S.W.3d 167, and the mandate was entered on October 24, 2015.

Rose filed a timely petition for relief under Rule 37 on December 21, 2015, with the Polk County Circuit Court. The petition alleged numerous errors by trial counsel, Greg Klebanoff, and contained a proper verification. An amended petition for Rule 37 relief was filed on April 6, 2016, and a hearing was held on June 23, 2016. Lori Rose testified that she had received a text message from Vaught somewhere between November 19 and 21, 2013, wherein Vaught said that she was welcome in his home at any time. The incident occurred on November 23, 2013. She said that she had showed this text message to Klebanoff, and he did not produce the message for the jury. She also said that she did

not have a defense-strategy discussion with him. She said Klebanoff was more concerned with his payment than about trial strategy. She said that the trial court had granted a motion in limine that the word "victim" was not to be used during the course of the trial, but when it was used, Klebanoff never objected. She said that she had received several letters from Klebanoff, one of which stated that if she had paid him more she would have had a better defense, but she could not produce that letter. She said that Klebanoff did not use the witnesses who were willing to testify on her behalf, and she thought that if they had been used during the sentencing phase, she might have made a more favorable impression on the jury.

Greg Klebanoff testified that he had represented Rose, that he was aware that Rose had been given a portable breath test on the night she was arrested, and that she registered .17, which is more than twice the legal limit. He said that he did not bring up the test result during trial and did not move to suppress the first statement that she gave. He said Rose testified that she was intoxicated, hysterical, and upset. He said that he had thought about filing a motion to suppress based on intoxication, but he decided there was not much dispute about what had happened, and if he wanted a positive result for Rose, he would have to get it through jury nullification.

Klebanoff said that jury nullification requires sympathy, and he thought her first statement showed that she was confused, distressed, and intoxicated, and the jury would have sympathy for her. He said that he supposed Rose could have added input on selecting the jury, but he had never had his clients participate in jury selection. He said that he did not object when the word "victim" was used and did not move for a mistrial because a

mistrial is a drastic remedy, and a bench instruction to disregard is normally sufficient. He said that objecting to something that was prohibited would call more attention to it. He also said that he did not think the text message that Rose was welcome in Vaught's home at any time was important because it was superfluous. He said that Rose's character had been called into question, and he did not call the witnesses because he knew that Rose had assaulted her ex-husband with a gun. Klebanoff thought that calling the character witnesses that Rose had referred to would have opened the door for the State to bring out that in 2003 she had chased her husband through the woods with a deer rifle, shooting at him.

After taking the petition under advisement at the conclusion of the hearing, the trial court denied Rose's petition and filed its findings of fact and conclusions of law on August 30, 2016. The trial court stated in each of its conclusions of law that Rose had shown neither deficient performance of counsel nor actual prejudice to her case as required by *Strickland v. Washington*, 466 U.S. 668 (1984). A notice of appeal was timely filed on September 26, 2016, and this appeal followed, wherein Rose argues that the trial court erred in denying her petition for Rule 37 relief based on ineffective assistance of her counsel.

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.*

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland*, *supra*. *Conley*, *supra*. In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first demonstrate that counsel's performance was deficient. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id*. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id*.

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Conley*, *supra*. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*.

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id*. We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an

insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697). The concept of cumulative error is not recognized in Rule 37.1 proceedings when assessing whether a petitioner was afforded effective assistance of counsel. *Bryant v. State*, 2013 Ark. 305, 429 S.W.3d 193 (per curiam); *State v. Hardin*, 347 Ark. 62, 60 S.W.3d 397 (2001) (holding that it was reversible error for the trial court to consider cumulative error in assessing claims of ineffective assistance of counsel).

First, Rose claims that her trial counsel was ineffective for failing to file a motion to suppress the first statement she gave to police because she was intoxicated when she gave it. She cites *Moore v. State*, 2010 Ark. App. 771, for the proposition that a custodial statement is presumptively involuntary, and the burden is on the State to prove that it was given voluntarily and was knowingly and intelligently made. She also cites *Sparkman v. State*, 373 Ark. 45, 281 S.W.3d 277 (2008), which held that the nature of a confession shows that the introduction of a videotaped statement at trial will likely, if not certainly, impact the outcome. Based on these cases, she argues that counsel's failure to file a motion to suppress her statement was not proper trial strategy and led to her conviction because the prosecutor was able to attack her credibility. She claims that all strategic decisions must still be supported by reasonable professional judgment, *Wicoff v. State*, 321 Ark. 97, 900 S.W.2d 187 (1995), and there was no reasonable professional judgment here.

As the trial court noted in its rejection of Rose's claim, failure to file a suppression motion is not ineffective assistance of counsel absent a showing that the motion was warranted and would have succeeded. *Harrison v. State*, 371 Ark. 474, 268 S.W.3d 324 (2007). At the Rule 37 hearing, Rose presented no testimony from a police officer

regarding the circumstances of her statements and did not testify about her statements to police. Therefore, the trial court correctly ruled that Rose had not established that a suppression motion was warranted and would have succeeded.

Second, Rose claims that her trial counsel was ineffective for failing to introduce the text message she had received from Vaught that said she was welcome at his place any time. Her counsel said that he had seen no need to introduce it. Rose argues that the court of appeals relied on the fact that the message was not introduced, calling her statement that she had been given permission "self-serving." *See Rose*, *supra* (referring to the text message, this court held that the jury was not required to believe Rose's self-serving testimony, nor was it required to set aside its common sense and experience in reaching a verdict; as such, the jury could have reasonably found from the evidence that Rose no longer had a license or privilege to enter Vaught's home on the night of the shooting, especially late at night when he was asleep). Rose acknowledges that an attorney's decision not to call a witness is a matter of professional judgment and that the witness could have offered beneficial testimony is not proof of counsel's ineffectiveness. *See Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001). However, in *Lee*, the defendant told the trial court that he had discussed with his counsel his right to testify and the implications of that. *Id*. Here, Rose contends that there was no proof that counsel exercised proper professional judgment. *See Wicoff*, *supra* (all strategic decisions must still be supported by reasonable professional judgment).

Although the text message was not introduced into evidence, Rose testified to the text message, and Vaught testified that he did not require an explicit invitation for Rose to visit his home. Further, Rose's counsel argued this point to the jury in closing arguments.

Rose has not shown how presenting cumulative testimony in the form of a text message would have created a reasonable probability of a different outcome at her trial. *Feuget v. State*, 2015 Ark. 43, 454 S.W.3d 734. Mere allegations that the jury would have been swayed by additional testimony are conclusory and will not support an assertion that counsel was ineffective. *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992).

Further, in Arkansas, although one may hold a license or privilege to enter a home, he does not continue to have that privilege or license once he inflicts injury upon the owner. *See Holt v. State*, 2011 Ark. 391, 384 S.W.3d 498; *Young v. State*, 371 Ark. 393, 266 S.W.3d 744 (2007). Thus, Rose's claim that she had a "license" is meritless, and counsel is not required to raise frivolous or meritless arguments to be effective. *Cook v. State*, 361 Ark. 91, 204 S.W.3d 532 (2005).

Third, Rose claims that her trial counsel's failure to present witnesses on her behalf amounted to ineffective assistance. Our supreme court held as follows:

> [T]he decision of trial counsel to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37.1. *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001). Trial counsel must use her best judgment to determine which witnesses will be beneficial to her client. *Id.* When assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate. The fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Id.* Nonetheless, such strategic decisions must still be supported by reasonable professional judgment. *Id.* Even if a decision proves unwise, matters of trial tactics and strategy are not grounds for postconviction relief. *Id.*

*Banks v. State*, 2013 Ark. 147, at 4.

Rose argues that by failing to present witnesses it appears the defense just threw away all defenses. She contends that because she included it in her amended petition and the

prosecutor agreed what the testimony would be at the hearing, it is known what the witnesses' testimony would have been. Their testimony would have shown her state of mind on the night of the incident, given justification for her conduct, and given evidence of motivation for such conduct, lending weight to her credibility. She claims that they could have testified at either the guilt or penalty stages, and the failure to call them shows counsel's abandonment and was not reasonable or professionally justified.

The State contends that Rose has expanded her argument that counsel was ineffective for failing to call these alleged character witnesses to include allegations that all of the witnesses could have testified about the alleged sexual assault of Rose's daughter and how that assault had affected Rose's state of mind on the day in question. She also newly asserts that the witnesses could have provided justification for her conduct. These expanded arguments are not preserved for appeal. *See Williams v. State*, 2012 Ark. App. 310, 420 S.W.3d 487.

At the Rule 37 hearing, counsel stated that he did not present character testimony because he successfully had moved in limine to exclude several instances of Rule 404(b) conduct and was fearful that, by presenting character evidence, he would be opening the door for questioning on the excluded evidence. Ark. Rule of Evid. 404(b) (2016). This was a reasonable exercise of professional judgment by trial counsel. *See Echols v. State*, 354 Ark. 530, 127 S.W.3d 486 (2003) (decision not to cross-examine witness for fear of opening door to the trial court's changing its ruling excluding evidence was an exercise of reasonable professional judgment).

Fourth, Rose argues that counsel failed to prepare a defense because they met three times prior to trial, and his desire to be done with the case created a conflict of interest that adversely affected his performance and rendered his assistance ineffective. *Cuyler v. Sullivan*, 446 U.S. 335 (1980) (conflict of interest at issue was one lawyer representing multiple clients). However, a claim that counsel did not meet often enough with petitioner is not a sufficient ground for ineffective assistance of counsel. *Dansby v. State*, 350 Ark. 60, 84 S.W.3d 857 (2002). Further, as the trial court indicated in its order, Rose failed to demonstrate what additional information would have been discovered with more meetings and that the information would have changed the outcome of trial. Conclusory statements cannot be the basis for postconviction relief. *Anderson v. State*, 2011 Ark. 488, 385 S.W.3d 783.

Fifth, Rose contends that counsel's failure to include her in voir dire and to conduct proper jury selection rendered his assistance ineffective. She cites *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97 (1934), and *United States v. Gordon*, 829 F.2d 119 (1987), for the proposition that a defendant's presence at voir dire is substantially related to his defense because it allows him an opportunity to give advice or suggestions to his lawyers. Rose argues that her counsel clearly violated these tenets when he failed to involve her in the selection of the jury.

To prevail on an ineffective-assistance-of-counsel claim with regard to jury selection, a petitioner must first overcome the presumption that jurors are unbiased. *Wheeler v. State*, 2015 Ark. 233, 463 S.W.3d 678. Counsel admitted that he did not include Rose in the jury-selection process, but Rose did not establish that this practice amounted to deficient

11

performance or that she was prejudiced by this failure. The trial court found that Rose failed to raise any concerns about any of the jurors as they were being selected. Thus, Rose has failed to establish deficient performance or prejudice.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Ernie Witt*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.