

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR–16–169

|  |  |  |
|---|---|---|
| | | **OPINION DELIVERED:** OCTOBER 4, 2017 |
| DONNIE SLATER | | |
| | APPELLANT | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 01DCR–12–75] |
| V. | | |
| | | HONORABLE DAVID G. HENRY, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED IN PART; REMANDED IN PART |

## ROBERT J. GLADWIN, Judge

Donnie Slater appeals the Arkansas County Circuit Court's order denying his Rule 37 petition for postconviction relief. Ark. R. Crim. P. 37.1 (2016). We assumed jurisdiction of this appeal pursuant to footnote 1 in *Barnes v. State*, 2017 Ark. 76, 511 S.W.3d 845 (per curiam). Slater contends that the trial court erred in denying his petition because (1) trial counsel was ineffective at trial because he failed to do an adequate pretrial investigation and properly prepare for trial; (2) trial counsel failed to make a specific directed-verdict motion causing the issue to be waived on appellate review; (3) trial counsel was ineffective for not objecting to the State's presenting evidence of Slater's prior felonies following the guilty verdict; (4) trial counsel failed to object when the trial court sentenced Slater to an illegal ten-year enhancement under Arkansas Code Annotated section 5-64-411 (Repl. 2016) because when the trial court lacked authority to impose it; (5) trial counsel was ineffective

for not objecting to the State's introduction into evidence the crime-lab reports and drugs; (6) appellate counsel was ineffective for failing to discuss possible errors that were apparent on the face of the abstract and addendum; (7) appellate counsel was ordered by the Arkansas Court of Appeals to file a substituted appeal brief, and counsel failed to send Slater a copy of the substituted brief at Slater's request; (8) trial counsel was ineffective for failing to move for a mistrial when information concerning Slater's criminal history was disclosed during voir dire and during the testimony of a witness at the guilt stage of the trial; (9) trial counsel was ineffective for failing to object to the testimony of Arkansas State Police Special Agent Scott Russell; and (10) trial counsel was ineffective for failing to object to the proximity enhancement because no proof was offered during trial.

We note, as a preliminary matter, that both the original and the second amended sentencing orders contain clerical errors in that they do not reflect that Slater was convicted as a habitual offender; however, he was charged and convicted as a habitual offender. We order the circuit court to correct the clerical error in the second amended sentencing order to reflect that Slater was convicted as a habitual offender. Accordingly, we affirm in part and remand in part for the correction of the second amended sentencing order.

The State charged Slater by information with two counts of delivery of a controlled substance and two counts of use of a communication device in connection with the deliveries.[1] The State also charged him as a habitual offender and sought a proximity enhancement.

---

[1] Count 1 (delivery) and Count 3 (use of a communication device) were connected, as were Count 2 (delivery) and Count 4 (use of a communication device).

Following the trial on March 14, 2013, the jury found Slater guilty of one count of delivery of a controlled substance (Count 2) and one count of use of a communication device (Count 4) and determined that the delivery had occurred within 1000 feet of a daycare facility. The jury found Slater not guilty of the other delivery and communication-device counts (Counts 1 and 3). Slater was sentenced to twenty years' imprisonment on the delivery charge and ten years' imprisonment on the communication-device charge. The circuit court sentenced Slater in accord with the jury's recommendation and ordered the sentences to run consecutively for a total of thirty years in the Arkansas Department of Correction. The ten-year proximity enhancement was added to the sentence in keeping with the jury's finding that the drug delivery occurred within 1000 feet of a day care facility. Slater appealed to this court, which affirmed his conviction on February 18, 2015. *Slater v. State*, 2015 Ark. App. 94. After recalling the initial mandate of March 10, 2015, we issued a final mandate on April 1, 2015.

Slater filed a timely petition for relief under Rule 37.2 on May 29, 2015, and supplemented it by an amendment on August 25, 2015,[2] containing proper verifications and alleging a total of ten instances of ineffective assistance of counsel. The State filed a response on June 5, 2015, and the Arkansas County Circuit Court held an evidentiary hearing on September 23, 2015, during which Slater's counsel withdrew the tenth claim. The circuit court denied relief on claims one through nine in a twelve-page written order entered on

---

[2]Slater initially filed the petition pro se, but Ms. Laura L. Calhoun was later appointed to represent him, and she filed the amended petition on his behalf on August 25, 2015. She later filed a motion to be relieved as counsel on November 4, 2015, and that motion was granted by the circuit court on November 9, 2015. Slater is once again proceeding pro se.

November 3, 2015. Slater filed this appeal pro se on November 24, 2015, contending that the circuit court erred by denying relief on all ten grounds asserted in both his petition and his amended petition.

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Id*. In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id*.

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984); *Conley*, *supra*. In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first demonstrate that counsel's performance was deficient. *Rose v. State*, 2017 Ark. App. 355, __ S.W.3d __. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id*. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id*.

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Conley*, *supra*. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*.

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id*. We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697). The concept of cumulative error is not recognized in Rule 37.1 proceedings when assessing whether a petitioner was afforded effective assistance of counsel. *Bryant v. State*, 2013 Ark. 305, 429 S.W.3d 193 (per curiam); *State v. Hardin*, 347 Ark. 62, 60 S.W.3d 397 (2001) (holding that it was reversible error for the trial court to consider cumulative error in assessing claims of ineffective assistance of counsel).

Many of Slater's arguments on appeal are quite different from those made in both his petition and his amended petition. Several arguments have been expanded or changed, and new allegations of ineffective assistance have been added. When reviewing the circuit court's ruling on a Rule 37.1 petition, the appellant is limited to the scope and nature of the arguments that he made below that were considered by the circuit court in rendering its ruling. *Pedraza v. State*, 2016 Ark. 85, 485 S.W.3d 686 (per curiam). An appellant in a Rule

37.1 proceeding is limited to the scope and nature of his arguments below, *see Carter v. State*, 2015 Ark. 166, 460 S.W.3d 781, and issues raised for the first time on appeal, even constitutional ones, will not be considered because the circuit court never had an opportunity to rule on them. S*ee Detherow v. State*, 2015 Ark. 447, 476 S.W.3d 155. Because well-established legal principles make large portions of Slater's arguments unreachable on appeal, we address only the arguments made in the petition and amended petition, as well as arguments addressed at the Rule 37 hearing.

Slater first alleged that trial counsel was ineffective because he failed to investigate the evidence that the State intended to use at trial, to review facts of the charges, or to pursue "cooperating witness status," and he failed to go over trial-strategy tactics or defense theory with Slater. He also contended that trial counsel was ineffective because he should have made the jury aware that counsel had filed a motion requesting background information on the informant and that the State had failed to fully comply with Ark. R. Crim. P. 17.1 (2016)—asserting that trial counsel should have held the State to the requirements of Rule 17.1.

In its order denying relief, the circuit court held that Slater's allegations were conclusory, because he did not "state in the petition what a more thorough investigation of the evidence should have consisted of or what it might have shown[,]" and he did not "explain in what way trial counsel was unprepared for trial." The circuit court found that the conclusory statements and allegations without factual basis were insufficient to overcome the presumption that counsel was effective and that the statements and allegations did not warrant granting postconviction relief.

We hold that the circuit court's ruling was not clearly erroneous. Slater's allegations were conclusory and cannot support an allegation of ineffective assistance of counsel. *Woody v. State*, 2009 Ark. 413, at 5. The closest Slater came to making a specific allegation of ineffective assistance was his complaint that trial counsel did not get a more specific response from the State to the Rule 17.1 motion regarding the informant's background. However, Slater did not specify any particular information that the State did not provide or specify how the State's failure to provide that information caused him prejudice. *See Strickland, supra*; *see also Watson v. State*, 2014 Ark. 203, at 3–4, 444 S.W.3d 835, 839. Appellant's additional arguments cannot be reached because they were not made below. *Pedraza, supra.*

Slater next contended in his petition that trial counsel was ineffective for failing to preserve his substantial-evidence argument for appeal because he did not make a specific directed-verdict motion as required by Ark. R. Crim. P. 33.1. The circuit court did not clearly err by finding that Slater's allegations were conclusory, because he failed to "state what specific elements the directed-verdict motion lacked," and he did not "demonstrate that there would have been merit to the motion had it been more specific." Appellant's additional arguments cannot be reached because they were not made below. *Pedraza, supra.*

Alternatively, substantial evidence supported the verdict, and there was no prejudice under *Strickland, supra.* Evidence supporting the two convictions included the following. There was a video- or audio tape of the drug sale from Slater to informant Nick Rudd that was played for the jury, and still photos from the video also were introduced. While the videotape contained an inaccurate date stamp, that discrepancy was explained by Agent Russell. Rudd testified that he had known Slater his whole life, and Rudd was doing

undercover work for the police. He testified that on October 2, 2011, he met officers outside town, contacted Slater on Slater's cell phone, and asked to buy sixty dollars' worth of crack cocaine. While wearing a recording device, he picked Slater up at an apartment complex and dropped him off at the Meadow Cliff housing project. Rudd drove around the block, and Slater came back to the car, where he exchanged crack cocaine for Rudd's sixty dollars, which Rudd had obtained from Agent Russell. Rudd then left and returned to Agent Russell and the other officer working the case, Captain Dean Mannis of the Stuttgart Police Department, and delivered the drugs to them.

Captain Mannis testified that he was assigned to the Tri-County Drug Task Force and that he worked with Agent Russell in investigating and prosecuting drug cases in Arkansas County, sometimes using confidential informants such as Rudd. He testified that they had used Rudd to buy drugs from Slater on October 2, 2011. He described the process used for searching both Rudd's car and his person prior to the drug purchase, and he verified that Rudd had been using the recording equipment and "buy money" they had given him. He described the circumstances of the drug purchase from Slater at Meadow Cliff, including Rudd's call to Slater.

Agent Russell testified regarding his experience in working narcotics investigations and stated that he had been involved with Captain Mannis in the purchase of drugs by Rudd from Slater. He also testified about how he and Captain Mannis had searched Rudd and his car, had placed the body mike and electronics on him, and had given Rudd the buy money. He noted that Rudd had set up the buy by calling Slater's cell phone. He described in detail the actions of Rudd and Slater during the buy and noted that the buy location was less than

1000 feet from a daycare facility. He then testified that he and Captain Mannis followed Rudd to a prearranged location, obtained the drugs and the recording device, and searched him to confirm the money was gone. He watched the video and compared it to Rudd's debriefing to make sure they were consistent. He placed the drugs in an evidence baggie, placed the proper markings on the baggie, returned to his office, placed the baggie into an evidence envelope, sealed it with evidence tape, put clear tape over that, put his initials over the tape, and later submitted it to the state crime laboratory for analysis. The envelope containing the drugs was introduced into evidence, along with a crime-lab report showing that the sample contained cocaine base and levamisole, a worming agent for livestock used as a cutting agent. Agent Russell testified that sellers often cut the drugs to dilute them and earn more money selling them that way. He testified regarding the process used to make crack cocaine, and he testified that from his many classes and studies on the effects of crack cocaine, it is an addictive substance. He also testified regarding how crack cocaine is consumed or ingested and what effect it has on the user. He testified that the amount in the envelope was sixty dollars' worth of cocaine but that the sample size would have been reduced by the testing done at the crime laboratory. When the videotape of the drug purchase was played, Agent Russell testified that it showed crack cocaine that matched what Rudd had delivered to him after the purchase.

Third, Slater argued that the circuit court clearly erred by finding that trial counsel was not ineffective for failing to object to habitual-offender evidence. As noted in the order denying relief, Slater alleged that he was never charged by information as a habitual offender and that the State did not introduce sufficient proof of the prior convictions. He contended

that counsel was ineffective for failing to object to the presentation of the convictions to the jury via the State's reading the convictions into the record and the habitual-offender-sentencing jury instruction. We hold that the circuit court correctly found that the information did charge him as a habitual offender and noted that this court stated that he was charged as a habitual offender in its opinion; *Slater, supra.* Accordingly, no relief was warranted as to the allegation of ineffective assistance related to the charging instrument.

Regarding Slater's allegation that there was insufficient proof of his prior convictions and that counsel was ineffective for not preserving that issue for appeal, we hold that the circuit court correctly found that no relief was warranted. During the sentencing phase of trial, without objection from trial counsel, the prosecuting attorney read a list of Slater's prior convictions to the jury. *Slater, supra.* At the Rule 37 hearing, the State introduced a list of Slater's five prior convictions along with certified copies of the supporting documents to prove each conviction and to establish that he had been represented by counsel in each case. All the supporting documents were shown to have been certified on or prior to the date of Slater's trial. His trial counsel also testified that he had reviewed the supporting documents prior to the sentencing phase of trial and that, based on his examination, there was no basis upon which to object to the convictions being presented to the jury.

Dennis Molock, public defender and experienced criminal trial attorney, testified that once he is satisfied that the State can prove prior convictions, he considers it sound trial strategy to allow the State to read a list of convictions to the jury instead of having all the documentation spread out before the jury. Under these circumstances, Slater's claim of ineffective assistance had no merit, because trial counsel is not ineffective for failing to make

a futile argument, *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63; trial strategy is not grounds for Rule 37 relief, *see Rose, supra;* and Slater could not demonstrate the prejudice required by *Strickland.* Appellants additional arguments cannot be reached because they were not made below. *Pedraza, supra.*

Fourth, Slater contended in his petition that counsel was ineffective for failing to object to the sentence enhancement under Ark. Code Ann. § 5-64-411 (Supp. 2011). He argued that the enhancement was illegal because it was not charged in the information. He also argued that the jury, not the court, should have imposed the enhancement. We hold that the circuit court correctly found that Slater was charged with the proximity enhancement and note that the circuit court did not specifically rule on the argument that the jury, rather than the court, should have imposed the enhancement. Because Slater did not get a ruling on that argument, it is not preserved for appeal. *Norris v. State*, 2013 Ark. 205, 427 S.W.3d 626. As noted in point ten below, Slater's Rule 37 counsel withdrew his allegation that trial counsel was ineffective for failing to object to the proximity enhancement for lack of evidence, because the trial record demonstrates that proof of proximity was presented to the jury. Appellant's additional arguments cannot be reached because they were not made below. *Pedraza, supra.*

Fifth, Slater argued in his petition that trial counsel was ineffective for not objecting to the introduction of the crack cocaine and the Arkansas State Crime Laboratory report because the crime-lab employee who tested the drugs did not testify at trial. He contended that the State did not prove chain of custody of the drugs for that reason. In making that argument, Slater pointed out that there was a discrepancy between the weight of the drug

as reported by Agent Russell and as reported by the crime lab; thus, his attorney should have challenged the introduction of the drugs for lack of proper authentication and testing. He also argued that there was a discrepancy between the informant's testimony and Agent Russell's testimony regarding the packaging of the drugs. We hold that the circuit court correctly determined that counsel was not ineffective for failing to object to the State's not presenting the testimony of a crime-lab employee. The circuit court noted that Slater did not explain how he was prejudiced by the lack of a crime-lab specialist's testimony or how the testimony would have changed the result of his trial. The circuit court also noted that Mr. Molock testified that as a matter of trial strategy, he would not typically demand the presence of the chemist because the composition of the substance is usually not the real issue; instead, it is the circumstances surrounding the alleged delivery. That testimony corroborated the testimony of Slater's trial counsel that, as a matter of trial strategy, the sworn laboratory-test results would have come into evidence anyway and that addressing the issue of the delivery was more important. In fact, counsel testified that he had agreed with the prosecution to the introduction of the lab report.

Because the decision by trial counsel not to object to the introduction of the drugs and the report was trial strategy, Slater did not receive ineffective assistance of counsel. *Rose*, *supra*. We further hold that the circuit court correctly determined that the chain of custody of the drugs was sufficiently established given Agent Russell's testimony concerning the confiscation of the drugs, delivery to the crime lab, and the package in which they were returned, as previously explained. *See Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001). Slater did not show either the deficient performance or the prejudice required by *Strickland*.

SLIP OPINION

Appellant's additional arguments cannot be reached because they were not made below. *Pedraza*, *supra*.

Sixth, Slater argued in his petition that his appellate counsel was ineffective for failing to adequately brief his appeal in the first instance when he filed a no-merit brief under *Anders v. California*, 386 U.S. 738 (1967). We note that this court ordered rebriefing in the direct appeal, and appellate counsel filed a brief on the merits as instructed by the court regarding one of the issues Slater raised in his pro se points on appeal. *See Slater*, *supra*. We hold that the circuit court correctly determined that Slater failed to demonstrate how he was prejudiced by the alleged inadequacies in appellate counsel's initial no-merit brief. *Strickland*, *supra*; *Watson*, *supra*. Appellant's additional arguments cannot be reached because they were not made below. *Pedraza*, *supra*.

Seventh, Slater contended in his petition that appellate counsel rendered ineffective assistance of counsel by failing to send him a copy of the substituted merit brief. He argued that without a copy of the brief, he was ill-equipped to represent himself. The circuit court correctly ruled that Slater did not demonstrate how this caused him prejudice under *Strickland*. Slater filed a Rule 37 petition and the circuit court appointed him counsel. Counsel amended the petition and conducted the hearing, which eliminated any prejudice that could have been caused by counsel's failure to mail appellant a copy of the brief. Appellant's additional arguments cannot be reached because they were not made below. *Pedraza*, *supra*.

Slater's eighth contention in his petition was that he was denied his right to an impartial jury under Ark. Const. art. 2, § 10 because evidence that he had a criminal history

and had previously been incarcerated was introduced at trial during voir dire and during the examination of one of the detectives. During voir dire, prospective juror Ricky Bateman—in response to a question from the court to the jury panel inquiring whether anyone knew Slater—stated, "I used to work with him. And I know him from the jail when I worked there." As noted by the circuit court in denying relief, Bateman did not say that Slater was an inmate at the jail, and he added that he did not know of any reason that the past acquaintance would prevent him from being a fair and impartial juror. Bateman was selected to serve on the jury. Moreover, trial counsel testified at the Rule 37 hearing that Slater wanted Bateman seated on the jury because he thought he would be fair.

Slater argues on appeal that Slater's proffered exhibit 5 shows that Bateman's statement was prejudicial. We disagree and hold that, if anything, the proffered evidence showed that Bateman's presence on the jury helped Slater, just as Slater told his attorney he thought it would. Bateman cautioned the other jurors not to assume guilt on the September 26, 2011 charges simply because they were finding Slater guilty of the October 2, 2011 charges, and he also cautioned them that his knowledge of Slater had no bearing on the current charges. Accordingly, Slater is unable to prove prejudice resulting from juror Bateman being part of the jury based on the proffered statement, even if the statement had been deemed admissible by the circuit court.

James Triplett, another prospective juror, responded to the question as to whether anyone knew Slater by saying, "Yeah, I was a juror in a trial with Mr. Slater before . . . (inaudible)." We note that Triplett did not disclose that Slater was the defendant in the trial, and we hold that the circuit court correctly noted that the comment could have been

interpreted as Slater's having been a member of the jury. Triplett was excused immediately without further discussion.

Finally, when Agent Russell was asked on cross-examination how he had acquired a picture of Slater for identification purposes, he said that he did an ACIC search, looked up his criminal history, and obtained his picture from that. In its order denying relief, the circuit court determined that, while the statements made by Bateman and Triplett might have left the impression that Slater had been in trouble with the law before, they were general in nature and could have been interpreted otherwise. Moreover, the circuit court noted that trial counsel testified that as a matter of trial strategy, he did not move for a mistrial in those instances because it would have drawn more attention to the comments. We reiterate that trial strategy does not support a claim of ineffective assistance of counsel. *Rose*, *supra*. The circuit court found that Slater failed to establish that he was prejudiced by the comments, and the fact that the jury acquitted Slater of two of the charged counts is counter to his claim that he was prejudiced. Because Slater failed to show either the deficient performance or the prejudice required by *Strickland*, we hold that the circuit court did not clearly err by denying his request for relief. His additional arguments cannot be reached because they were not made below. *Pedraza*, *supra*.

Ninth, Slater argued in his amended petition that his trial counsel was ineffective for failing to object to the testimony of Agent Russell through which the crime-lab report was introduced. Slater claimed that Agent Russell was not the proper person to authenticate the report and that Agent Russell "essentially testified as an expert witness [without having been

qualified as one] regarding the chemical make-up and effects of the drugs[.]" He asserted that he was prejudiced and, as a result, denied a fair trial.

The circuit court found that it had addressed the admission of the lab results previously in Slater's fifth contention and found that Agent Russell's testimony was based on his education and experience in drug cases, making his testimony admissible. *See Redman v. St. Louis Sw. Ry. Co.*, 316 Ark. 636, 873 S.W.2d 542 (1994) (noting that Arkansas appellate courts have consistently allowed law enforcement officers to testify based on their education and experience). Accordingly, we hold that there was no ineffective assistance of counsel under *Strickland*. Appellant's additional arguments cannot be reached because they were not made below. *Pedraza, supra*.

Finally, in the amended petition, Slater contended that no evidence was presented at trial to show that the crime occurred within 1000 feet of a daycare. *See* Ark. Code Ann. § 5-64-411(a)(2)(g) (Supp. 2016) (providing for ten-year sentence enhancement where offense is committed within 1000 feet of the real property of a daycare center). As noted by the circuit court in its order, Slater's Rule 37 counsel withdrew this claim because such evidence was presented at trial. Indeed, Agent Russell testified that the crime occurred at the Meadow Cliff housing project across the street from, and within 1000 feet of, a day care center, and that testimony was substantial evidence to support the jury's finding regarding the enhancement. Appellant's remaining arguments presented on appeal were not made before the circuit court and therefore cannot be reached. *Pedraza, supra*.

Alternatively, Slater's argument that he could not receive both the proximity enhancement and the habitual-offender sentence fails. In *Moore v. State*, 2012 Ark. App.

662, and *Hadley v. State*, 2010 Ark. App. 515, we held that the felon–in–possession statute is not an enhancement statute, but rather a separate crime, and that one can be both convicted of being a felon in possession of a firearm and receive habitual-offender sentencing. Committing the crime in proximity to a day care is an independent offense, not an enhancement, due to the commission of prior offenses of the same type. *Hadley*, *supra*. Thus, it was proper for the circuit court to impose both a habitual-offender sentence and the proximity enhancement.

Affirmed in part and remanded in part.

HARRISON and KLAPPENBACH, JJ., agree.

*Donnie Slater*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.