

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR–17–372

| | |
|---|---|
| MICHAEL L. BOYD | **OPINION DELIVERED:** NOVEMBER 8, 2017 |
| **APPELLANT** | |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION |
| V. | [NO. 60CR–13–3549] |
| STATE OF ARKANSAS | |
| **APPELLEE** | HONORABLE HERBERT T. WRIGHT, JR., JUDGE |
| | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Michael Boyd appeals the Pulaski County Circuit Court's order denying his Rule 37 petition for postconviction relief. Ark. R. Crim. P. 37.1 (2016). We assumed jurisdiction of this appeal pursuant to footnote 1 in *Barnes v. State*, 2017 Ark. 76, 511 S.W.3d 845 (per curiam). Boyd contends that (1) the circuit court erred in denying his petition because it failed to appoint him counsel for his Rule 37 proceeding, (2) trial counsel was ineffective for allowing the redaction of his taped confession to be played for the jury, (3) trial counsel was ineffective for failing to present evidence to establish his innocence, and (4) trial counsel was ineffective for failing to call multiple witnesses to prove his innocence.

Boyd was convicted by a Pulaski County jury on charges of aggravated robbery and theft of property and was sentenced to thirty and ten years of imprisonment, respectively, to be served consecutively.[1] On appeal, he contended that the circuit court committed

---

[1]Boyd was also charged with possession of firearms by certain persons, but that charge was nolle prossed by the State.

reversible error by denying (1) his motion for a directed verdict, (2) his motion to suppress statements made by him in a police interview, and (3) his motion to suppress a photo identification of him made by a bank teller.

The incident that led to these charges allegedly occurred at approximately 4:15 p.m. on September 13, 2013. A man entered a North Little Rock branch of Bank of the Ozarks with what appeared to be a handgun tucked into his waistband, demanded money, took $4,000 of the bank's money, and left in a car that was described by bank tellers. Boyd was stopped in his vehicle approximately an hour after the armed robbery. He had a similar appearance to the suspect, both as described by bank tellers and as seen in the bank-surveillance video. Boyd agreed to an interview at the police station and waived his *Miranda* rights. During the interview, he made several incriminating statements, including admitting (1) having visited three banks that day, (2) having been at the bank that was robbed, (3) having what he described as a "fake" gun, and (4) having taken money from a bank teller. Boyd's attorney filed a pretrial motion to suppress his statements asserting in part that they should be suppressed because the officer promised leniency to obtain Boyd's custodial statements, thereby rendering them involuntary.

At the hearing on Boyd's motion to suppress, Detective Michael Gibbons testified that he was the officer who interviewed Boyd. He explained that he read Boyd his *Miranda* rights, that Boyd told him that he understood his rights, and that Boyd said that he wanted to waive his rights to give a statement. Detective Gibbons stated that the interview lasted more than an hour. Detective Gibbons testified that although Boyd repeatedly asked whether he could receive a bond on the charges, he never promised Boyd a bond, explaining

that Boyd had not yet been charged. Detective Gibbons testified that he told Boyd that if a gun was not used or if it was not real, then the crime would be considered robbery, a charge where a bond was possible, but that a bond was not possible for aggravated robbery. Detective Gibbons stressed that Boyd was "all about getting a bond, no matter what the charge was," but he reiterated that he told Boyd that he would not lie and tell him he could go home. Detective Gibbons acknowledged that he falsely told Boyd that seven people had identified him as the robber and that traffic cameras had footage of his vehicle at the scene. Detective Gibbons explained that he did not threaten Boyd in order to obtain his confession. Additionally, he testified that Boyd had numerous prior offenses and extensive experience with the criminal justice system—including having his *Miranda* rights read to him—and had been to prison numerous times for felony convictions. Detective Gibbons pointed out that Boyd confessed during the interview that he went into the three banks that day (two Metropolitan Bank branches and the one Bank of the Ozarks branch), that he had a mask on, that he had a fake gun with him, and that although he denied pulling the gun out, a bank teller gave him the money.

Boyd's counsel argued that this confession was involuntary because it was the product of Detective Gibbons's false promise of leniency. The State argued that there was no promise, much less a clear promise, of obtaining a bond for Boyd, and that Detective Gibbons repeated that he could not make such a promise. The State argued that, under the totality of circumstances with this criminally experienced defendant, suppression of the statement was not warranted. The circuit court denied Boyd's motion to suppress, and a written order to that effect was subsequently filed.

Boyd also filed a pretrial motion to suppress the evidence of a photo identification made by witness Kathryn Pannell, alleging that the lineup shown to her was unduly suggestive. There were two written orders filed prior to trial denying this motion, but the circuit court agreed to consider the motion again during the trial.

At trial, the State presented proof that a man matching Boyd's description had entered two Metropolitan Bank locations that day before entering the nearby Bank of the Ozarks branch, where the robbery in question took place. North Little Rock police officer Kasey Knight responded to the report from a Metropolitan Bank of a "suspicious male" who came in wearing a dust mask, sunglasses, and a hat, and who was acting "kind of odd." Officer Knight viewed bank-surveillance video, which led him to broadcast to other officers that they should be on the lookout for an approximately thirty-year-old black male.

Sholanda Jenkins, a bank manager at that Metropolitan Bank branch, testified as to her description of the suspicious male. She explained that she had asked him to take off the dust mask, but he refused, stating that he had the flu. She verified a still photo of the man who had been in the bank that day as shown on bank-surveillance footage.

A bank teller from that same Metropolitan Bank branch, Kathryn Pannell, testified that, while she was on a break, she observed Boyd without his mask on just before he entered the bank. She also observed his vehicle and license plate and reported to police that it was a black Toyota with license-plate number 198 SRG. She confirmed that Boyd became agitated when he was unable to persuade the bank tellers to provide him a cash advance on a card that did not bear his name. She testified that employees locked the bank door after Boyd left, that Boyd attempted to re-enter the bank, but that he left instead. Ms. Pannell

stated that she then called the police. Ms. Pannell identified Boyd in the courtroom, stating that she was "100% sure" that Boyd was the man in the still photographs that showed a full-length color picture of Boyd in the bank lobby. She said that he had the mask in his hand before he put it on and that he told her that he had the flu as he walked into the bank. Ms. Pannell said that when he was inside the bank, the mask kept slipping down and that Boyd would have to put it back up.

Ms. Pannell had previously identified Boyd out of a six-person photo lineup when presented with it about four months after the robbery. She explained that the detective never suggested whom she should pick out, and she stated that she did not have any doubts about her recognition of Boyd in the photos. She testified that her job is in customer service and that she remembers people. Boyd renewed his motion to suppress the photo-lineup identification made by Ms. Pannell. His counsel complained that Ms. Pannell did not identify Boyd until months after the robbery; that her identification was based on her brief observation of Boyd; and that the lineup was unconstitutionally suggestive. The State responded that this was a "very good lineup" of similar-looking men and that there was nothing suggestive about it. The circuit court rejected the motion, standing by its earlier ruling.

The State called employees of the robbed Bank of the Ozarks branch, located on Camp Robinson Road. Sharon Erwin, one of the bank tellers, testified that the perpetrator had entered the bank wearing a black shirt, a black hat, dark sunglasses, and a white surgical mask. Ms. Erwin said that she knew something was not right. She testified that she overheard the man demand $10,000 from another teller, Pam Buzbee, who was in the window next

to her. After Ms. Buzbee refused and told the man to take off his mask, the man told Ms. Buzbee that he had the flu, called Ms. Buzbee "a bitch," lifted his shirt, showed the gun, and finally pulled the gun out and waved it around. Ms. Erwin testified that Ms. Buzbee was hesitant to give the man money, so she pulled out two straps of $100 bills that contained a total of $4,000 and tossed them in the window. Ms. Erwin said that she saw the man's face as he pulled his mask back and put it back on; the man then took the money and left. Ms. Erwin explained the bank-surveillance video footage as part of her testimony. She did not positively identify Boyd in court as the man in the bank that day, but she verified that the surveillance video was accurate.

Another bank employee, Greg Smith, was working the drive-through window that day. He testified that he heard the interaction and someone say, "He has a gun," but he did not observe the robbery. Mr. Smith saw the perpetrator get into his car to leave, and he could describe the license plate. Another bank employee, Chris Abbot, testified about observing the robbery, specifically hearing the man call Ms. Buzbee a "stupid bitch," and seeing Ms. Erwin throw the money toward the man before he left.

Detective Cody Brown detained Boyd after he had been stopped, approximately an hour after the robbery driving a vehicle matching the description given—a black 2012 Toyota Corolla, license-plate number 198 SRG. When he was pulled over, Boyd specifically volunteered that he had not been on Camp Robinson Road that day, although Detective Brown had not mentioned that road.

Detective Gibbons testified at trial that he conducted Boyd's interview and explained a summary of events similar to his description at the suppression hearing. Detective Gibbons

testified that Boyd did not immediately confess to the robbery but spent most of the conversation asking whether he could get a bond and go home. Detective Gibbons said he told Boyd "over and over" that he could not promise anything—including a bond—if he made a statement and explained that this was being investigated as an aggravated robbery. A portion of the audio-recorded interview was played, and transcripts of that portion were provided to the jury.

Detective Gibbons stated that Boyd had gone that day to the Metropolitan Bank on McCain Boulevard at 11:30 a.m. and at 3:29 p.m.; to the Metropolitan Bank on JFK Boulevard at 4:02 p.m.; and then to the Bank of the Ozarks on Camp Robinson Road at 4:11 p.m. All three banks branches were near one another, and Boyd was stopped approximately five miles away from the bank that had been robbed. He was found with more than $2,700 on his person. Detective Gibbons explained the process of putting the photo lineup together and showing it to Ms. Pannell, who identified Boyd "in about three seconds."

After the State rested, Boyd's counsel moved for directed verdict, arguing that the State had failed to prove that Boyd was the man who had robbed the bank and further failed to prove that he was armed with a deadly weapon or represented by words or conduct that he was so armed. The State argued in response that Boyd admitted that he had a fake gun; that he went to this bank; that he took the money; that bank surveillance video showed him committing the robbery; and that one bank teller he saw that afternoon positively identified Boyd. The circuit court denied Boyd's motion for directed verdict. Boyd rested without presenting additional evidence and renewed all his motions, which were all denied by the

circuit court. The jury found Boyd guilty of aggravated robbery and theft of property on December 11, 2014. He appealed those convictions, and we affirmed the circuit court on September 14, 2016. *See Boyd v. State*, 2016 Ark. App. 407, 500 S.W.3d 772 (*Boyd I*).

On October 18, 2016, Boyd filed a properly verified petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1. In his petition, he raised the following claims: (1) his trial counsel was ineffective for failing to argue that his confession was coerced; (2) he was denied actual and constructive counsel at trial because his attorney failed to introduce "material fact evidence and witnesses readily available"; and (3) his trial counsel was ineffective for failing to use his affirmative defense.

On February 1, 2017, without holding an evidentiary hearing, the circuit court denied Boyd's petition in a three-page written opinion. The circuit court denied relief on his first claim that his confession was coerced by Detective Gibbons, stating that Boyd failed to demonstrate how his attorney was ineffective because his confession was not coerced. The circuit court noted that Boyd asserted that trial counsel was "unreasonable to not seek out the facts of what led to any statement had, but deliberately so the record will reveal just how counsel based his motions and actions in favor of the state!" Regarding this allegation, the circuit court pointed out that it was specifically rejected by this court in *Boyd I*, *supra*. Boyd previously had moved to suppress the statements given to Detective Gibbons, but the circuit court noted that this court held that, based on the totality of the circumstances, the circuit court did not err in refusing to suppress the confession, that any alleged misrepresentation by Detective Gibbons would not make his confession inadmissible, and that there was no evidence that Detective Gibbons was attempting to procure an untrue

statement from Boyd. The circuit court found that Boyd failed to allege how trial counsel should have approached this issue differently. Referencing the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the circuit court reiterated that a defendant must allege both ineffective assistance of counsel and prejudice in the result of the trial. Because Boyd failed to allege how his attorney, who argued that his confession was involuntary and preserved the issue on appeal, was ineffective, and considering the ruling by this court, the circuit court found this allegation to be without merit.

For his second claim, Boyd asserted a denial of effective counsel when his attorney failed to "adversarially [sic] challenge the State's case with the material fact evidence and witnesses readily available and pointed out" to counsel by Boyd. He asserted that this would have resulted in a directed verdict in his favor. Boyd did not allege in his petition what these facts are or who the witnesses were. He merely presented several conclusory arguments about the evidence and contended that if his counsel had argued them, the circuit court would have granted his motion for a directed verdict. These were found by the circuit court to be nothing more than an argument regarding the sufficiency of the evidence—direct attacks on the verdict and not cognizable in a petition for postconviction relief. *See McCroskey v. State*, 278 Ark. 156, 644 S.W.2d 271 (1983).

Boyd's third claim and final allegation was that he was denied a fair and impartial trial because instead of asserting his "affirmative defense," his counsel committed a "ruse." Boyd did not explain what this "ruse" consisted of, and he did not identify which affirmative defense was available to him. He also made a passing comment about his counsel having a "conflict of interest" but failed to explain anything about the alleged conflict. The circuit

court rejected Boyd's third claim because he failed to identify which "affirmative defense" he was attempting to invoke.

Boyd filed a timely notice of appeal on February 9, 2017, in which he argued that the circuit court erred by (1) failing to appoint him counsel for his Rule 37 proceeding, (2) denying his claim that trial counsel was ineffective for allowing the redaction of his taped confession to be played for the jury, (3) denying his claim that trial counsel was ineffective for failing to present evidence to establish his innocence, and (4) denying his claim that trial counsel was ineffective for failing to call multiple witnesses to prove his innocence.

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.* Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland*, *supra*, and *Conley*, *supra*. In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first demonstrate that counsel's performance was deficient. *Rose v. State*, 2017 Ark. App. 355, __ S.W.3d __. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The defendant claiming ineffective assistance of

SLIP OPINION

counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Conley*, *supra*. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*.

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id*. We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697). The concept of cumulative error is not recognized in Rule 37.1 proceedings when assessing whether a petitioner was afforded effective assistance of counsel. *Bryant v. State*, 2013 Ark. 305, 429 S.W.3d 193 (per curiam); *State v. Hardin*, 347 Ark. 62, 60 S.W.3d 397 (2001) (holding that it was reversible error for the trial court to consider cumulative error in assessing claims of ineffective assistance of counsel).

If the circuit court determines that the petitioner is entitled to no relief based on the petition, files, and records, then the petitioner is not entitled to an evidentiary hearing. Ark. R. Crim. P. 37.3(a). In such cases, the circuit court should provide sufficient written findings

of fact to illustrate that the petitioner's claims are meritless. *Id.* Our review indicates that the petition, files, and records conclusively show that Boyd is not entitled to postconviction relief. As such, we can hold that the circuit court was not obligated to hold an evidentiary hearing before denying Boyd's petition as wholly without merit. *See Mancia v. State*, 2015 Ark. 115, 459 S.W.3d 259.[2]

For the first time on appeal, Boyd claims that he is entitled to an attorney pursuant to *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Martinez v. Ryan*, 566 U.S. 1 (2012), and that the circuit court erred by failing to appoint counsel to represent him for his Rule 37 proceedings. We note that he failed to file a motion at the circuit court level requesting the appointment of counsel; accordingly, the circuit court never had an opportunity to rule on such a request. Moreover, Boyd failed to argue that he was entitled to counsel in his Rule 37 petition. Accordingly, we hold that his argument is not preserved for appellate review. On appeal, this court considers only those arguments that were raised below and considered by the circuit court in rendering its decision. *E.g.*, *Anderson v. State*, 2015 Ark. 18, 454 S.W.3d 212 (holding the claim was not preserved where the circuit court neither provided a clear ruling on the request nor did the appellant clearly object).

Upon the review of a circuit court's denial of postconviction relief on an ineffective-assistance-of-counsel claim, this court determines, under the standards set forth in *Strickland*, *supra*, whether the circuit court clearly erred in holding that counsel's performance was effective. *Jamett v. State*, 2010 Ark. 28, 358 S.W.3d 874. To prove that counsel was

---

[2]Boyd does not argue that the circuit court erred in not holding an evidentiary hearing in this case.

ineffective, Boyd must show that (1) his counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms, and (2) that the "professionally unreasonable" conduct of counsel prejudiced the defense. *See Strickland*, *supra*. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *E.g.*, *Wertz v. State*, 2014 Ark. 240, 434 S.W.3d 895.

In order to demonstrate prejudice, Boyd must show that a reasonable probability exists that the fact-finder's decision would have been different absent counsel's errors. *See, e.g.*, *Robertson v. State*, 2010 Ark. 300, 367 S.W.3d 538. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless Boyd can satisfy both prongs of the *Strickland* standard, he cannot prevail on his ineffective-assistance-of-counsel claim. *See Feuget v. State*, 2015 Ark. 43, 454 S.W.3d 734. Boyd bears the burden to provide sufficient facts that affirmatively support his claim of ineffective assistance of counsel. *Id.* Conclusory statements, without more, cannot form the basis of postconviction relief. *See Hooks v. State*, 2015 Ark. 258, 465 S.W.3d 416. Accordingly, we hold that Boyd did not present sufficient facts in his petition or in his brief on appeal to support the three ineffective-assistance-of-counsel claims for postconviction relief raised on appeal. *See Watson v. State*, 2012 Ark. 27.

Regarding Boyd's allegation that the circuit court erred in allowing the redacted video of Boyd's confession to be played for the jury, we reiterate that for his claim to be properly before this court, he must have raised the issue below and obtained a ruling on it. *See, e.g.*, *Cowan v. State*, 2011 Ark. 537. Boyd's failure to obtain a ruling in the circuit court bars review of the issue on appeal. *See, e.g.*, *State v. Rainer*, 2014 Ark. 306, 440 S.W.3d 315.

The circuit court's order contains no ruling on Boyd's argument regarding a redacted videotape; rather, the circuit court seems to have understood Boyd's claim as a challenge to the introduction of an allegedly coerced confession. Additionally, after the circuit court denied his Rule 37 petition, Boyd failed to file a motion requesting a modification of the ruling. *See Watkins v. State*, 2010 Ark. 156, 362 S.W.3d 910 (explaining that if the circuit court neglects to rule on an issue raised in a Rule 37 petition, a petitioner may request the court to modify its order to include any omitted issue notwithstanding the prohibition against motions for reconsideration pursuant to Arkansas Rule of Criminal Procedure 37.2(d)). Because Boyd failed to obtain a ruling on this ineffective-assistance-of-counsel claim, we hold that it is not preserved for review.

Boyd next argues that his trial counsel was ineffective for failing to introduce DNA evidence found on a water bottle recovered from the parking lot of the bank where the robbery occurred. To the extent that Boyd is challenging the sufficiency of the evidence or arguing his innocence, such claims are not cognizable in a Rule 37 proceeding. *See Smith*, *supra*. The circuit court found that Boyd's ineffective-assistance-of-counsel claim was a challenge to the sufficiency of the evidence, and as such, it considered only a sufficiency claim, which it found was not cognizable, rather than an ineffective-assistance-of-counsel claim. As previously stated, without obtaining a ruling on the specific ineffective-assistance-of-counsel argument by the circuit court, Boyd's claim is not preserved for our review. *See, e.g., Rainer*, *supra*.

Alternatively, even if it had been preserved, Boyd's claim is meritless because his counsel was not deficient in failing to introduce nonexistent DNA evidence. On appeal, he

alleged that his trial counsel was ineffective for not introducing a DNA report into evidence. But the record indicates that no such DNA evidence exists. During trial, Boyd's trial counsel questioned Detective Gibbons about DNA evidence allegedly discovered on the water bottle that officers recovered from the front parking lot of the bank—one that appeared to be the same size and type of bottle that the suspect had been carrying. Detective Gibbons explained that no DNA evidence was recovered from the bottle. Accordingly, there was no DNA evidence that trial counsel could have introduced, and counsel's performance cannot be found to be deficient for failing to introduce evidence that did not exist. Likewise, Boyd cannot show prejudice from the failure to introduce DNA evidence because trial counsel appropriately questioned Detective Gibbons about the lack of DNA evidence and confirmed that the jury understood that there was no DNA evidence connecting Boyd to the bottle. As a result, Boyd has failed to demonstrate that the outcome of the trial would have been different.

Finally, Boyd appears to argue that trial counsel was ineffective for failing to call Lee Saulsberry to testify and "[l]ike six eyewitnesses who could not identify [Boyd] as the assailant." The circuit court analyzed this claim as a challenge to the sufficiency of the evidence and held that such a claim was not cognizable in Rule 37 proceedings. *See Smith*, *supra*. But even if Boyd's ineffective-assistance-of-counsel claim had been preserved and appropriate for review, his argument is conclusory and cannot be the basis for Rule 37 relief. *See, e.g.*, *Smith*, *supra*.

An ineffective-assistance-of-counsel claim based on trial counsel's failure to call a witness requires that a petitioner name the witness, provide a summary of the testimony,

and establish that the testimony would have been admissible. *E.g.*, *Bond v. State*, 2013 Ark. 298, at 6, 429 S.W.3d 185, 191. If a petitioner fails to provide the circuit court with the necessary information, "the allegation [is] conclusory and [does] not merit further consideration." *Id.* Boyd has failed (1) to provide a summary of the witnesses' testimony that he claims trial counsel failed to present and (2) to show that the testimony would have been admissible. Boyd also fails to provide the names of these alleged six eyewitnesses who "could not identify [him] as the assailant." Accordingly, we hold that his claim is conclusory and does not merit further consideration.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Michael Boyd*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.